THE PEOPLE OF PUERTO RICO, Plaintiff, *v.* CENTRAL CAMBALACHE, Defendant.

No. 22. Argued April 21, 1941.—Decided June 27, 1941.

60

*George A. Malcolm, Attorney General, Miguel Guerra Mondragón, Rafael Rivera Zayas,* and *Luis Venegas Cortés, Associate Counsel,* for plaintiff. *Jaime Sifre* and *Earle T. Fiddler* for defendant.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

On July 19, 1937, The People of Puerto Rico, after obtaining leave from this court, filed a *quo warranto* complaint against Central Cambalache, a domestic corporation, charging that the latter had infringed the provisions of its corporate charter and of the Federal and local laws limiting the holding of lands by corporations engaged in agriculture, and requesting its dissolution and the forfeiture of its franchise.

On September 7, 1940, the plaintiff filed in this Supreme

Court an injunction petition wherein it alleged that the People of Puerto Rico is ready to proceed to trial and willing to enter into the merits of its *quo warranto* complaint against Central Cambalache; that the directors of said corporation plan to adopt a resolution tending to transfer nearly all the lands of the defendant to the directors and stockholders with the object of rendering ineffectual the judgment that may be entered in the *quo warranto* proceeding; that should the proposed transfer be carried out, the People of Puerto Rico would be deprived of the right acknowledged by law in its favor of purchasing for itself all the lands of the defendant or of causing the same to be sold at public auction, or at least the complainant-petitioner would be involved in a multiplicity of suits to protect such right; that complainant has no other speedy, adequate, and effective remedy except that of injunction to safeguard its interests, which would be prejudiced if the writ sought were not granted; and that if the acts complained of were not enjoined, the jurisdiction of this court in the *quo warranto* proceeding would become academic, to the prejudice of the land policy of Puerto Rico and of the economic welfare of this island. Petitioner prays that a writ of injunction be issued directing the defendant and its directors, officers, and employees to refrain from alienating the lands of the defendant to any natural or artificial person.

On September 12, 1940, Messrs. José Matienzo Lezcano, Angel Abarca Portilla, Lorenzo Oliver, José A. Rubert, Miguel Mocoroa, Milton I. Durlach, Felipe F. Vidal, Luis R. González, Ramón Morán, Juan Pizá, Feliciano Matienzo, José Matienzo, Jr., José Rodríguez Ante, Emilio V. Venegas, and Vitaliano García, directors of the defendant corporation, appeared before this court and in answer to the order to show cause issued by this court and to the injunction petition, substantially alleged as follows:

1. They deny that Central Cambalache has committed or is committing *ultra vires* acts in owning and controlling more than 500 acres; or that the corporate charter of the defendant contains any limitation whatever as to the number of acres that Central Cambalache may hold and control; or that the holding or control of more that 500 acres by Central Cambalache, constitutes a violation of any law.

2. They deny that they plan to adopt any resolution tending to render ineffectual any judgment that might be rendered in the *quo warranto* proceeding.

3. They allege that at the general meeting of stockholders held on September 6, 1940, the stockholders of Central Cambalache adopted a resolution authorizing the directors of the corporation to take the steps necessary to sell nearly all the properties of Central Cambalache, and that the directors plan to recommend to the stockholders that they adopt whatever resolutions may be necessary to carry out the alienation of said lands.

4. They deny that the injunction sought is necessary to safeguard the interests of the People of Puerto Rico, and allege that any interests petitioner may have, have been protected through the recording of the *quo warranto* complaint in the registry of property by way of *lis pendens* notice, with respect to the real properties recorded in the name of Central Cambalache.

5. They deny that the jurisdiction of this court may be affected in any wise by any transfer that the defendant may make of its properties or of any part thereof.

In the answer there are also alleged eight special defenses which, briefly stated, are as follows:

*First:* That with the object of protecting their investment in the corporation and of putting an end to the *quo warranto* proceeding, some of the stockholders of Central Cambalache suggested to the Attorney General of Puerto Rico that the Federal Government or the Government of

Puerto Rico should buy the lands of Central Cambalache in excess of 500 acres, on the basis of a just and reasonable price; and that at a general meeting of stockholders held on August 18, 1939, the following resolution was adopted:

"WHEREAS, there has been instituted and is now pending in the Supreme Court of Puerto Rico a *quo warranto* proceeding against this company, based on the claim that this company is violating its articles of incorporation and the provisions of the Joint Resolution of the Congress of the United States of May 1, 1900; and

"WHEREAS, the company understands that the end which, in effect, the Government of Puerto Rico seeks to attain through the said *quo warranto* proceeding is that this company should dispose of the land which it possesses in excess of 500 acres, and that the same be acquired by the Government itself or by persons or group of persons which are not corporations; and

"WHEREAS, although the company understands that it has not committed any violation of said law or of its articles of incorporation, and for this reason, in its case, it does not waive the defenses set up in said proceeding, it is disposed to cooperate with the Government towards the accomplishment of the purposes stated in the preceding paragraph;

"Now THEREFORE, *Be it resolved* by the General Meeting of Stockholders of Central Cambalache:

"I.—That Central Cambalache is disposed to sell, either to The People of Puerto Rico or to The United States of America, or to any agency of either of said governments or to any other person or group of persons associated in noncorporate form, all of the lands of this company, with the exception of those occupied by the factory, dependencies thereof, and fixed railways, rolling material, telephone system, roads and loading equipment, and other factory annexes and properties which are used in the process of manufacture of sugar, including in the sale plantations of cane, lease contracts, agricultural equipment, cattle, and in general all of the properties which the Central has dedicated to the planting, cultivation, and harvesting of sugar cane.

"II.—That the Board of Directors of this company be and it is hereby authorized to negotiate such sale, on the terms which the directors may determine, subject to the final approval and confirmation of the stockholders."

That on the same day, August 18, 1939, the Board of Directors of Central Cambalache adopted a resolution which was identical with the one adopted by the stockholders and which authorized the President and Vice President of the corporation to deliver to the Attorney General of Puerto Rico a certified copy of the resolution, and to open with the Insular or Federal Government or with any individual or group of individuals proper negotiations leading to the sale of the properties of Central Cambalache.

That a copy of the resolution of the stockholders was delivered to the Attorney General of Puerto Rico together with a letter signed by counsel for the defendant, wherein said officer was advised, in short, that Central Cambalache was willing to sell the lands owned and controlled by it to the Insular or Federal Government or to any agency of either Government. He was further advised that a copy of the resolution was being sent to him "in order that the Government may take within a reasonable time such steps as it may deem advisable to acquire the property referred to in the resolution under the suggested conditions."

That at a conference called by the Attorney General, the latter stated that the Government lacked funds with which to purchase lands belonging to sugar mills; that in view of this information, a number of stockholders of Central Cambalache caused a plan to be prepared which was submitted to the Department of Justice through a letter of May 14, 1940, signed by the attorneys for the central. According to the plan thus submitted, a syndicate of stockholders of Central Cambalache would be formed and the same would act independently of the corporation. Said syndicate would then offer to Central Cambalache to purchase all its lands and agricultural equipment, with the exception of the 500 acres necessary for industrial purposes. Upon acquiring the properties, the syndicate would sell them in convenient blocks to various groups of individuals, who would hold them in common. In the plan

66

it is stated that the proponents thereof assume that if the Government accepts it and the plan is carried out, the pending litigation would be discontinued; and that the statements contained in the plan are made for the purpose of arriving at a basis for discontinuing the present litigation and should not be construed as an admission on the part of the defendant that it has violated any law.

That on July 22, 1940, the Attorney General of Puerto Rico answered informing the proponents of the plan that the Government had no funds available to effect the purchase of the agricultural lands of Central Cambalache and that the Legal Division for the Enforcement of the 500-Acre Law had expressed the opinion that the plan ought to be rejected.

That on August 26, 1940, counsel for Central Cambalache wrote to the Attorney General requesting him to state the reasons why the plan had been rejected, in order to meet, if possible, whatever objections there might be.

That if the option sought to be granted by Sections 1 and 2 of Act No. 47 of August 7, 1935, to the People of Puerto Rico may be exercised by the Government through the Attorney General, in such case the People of Puerto Rico has already elected not to purchase the lands of the defendant and hence that injunction does not lie to protect the alleged option to buy.

That the statements of the Attorney General, added to the fact that the Legislative Assembly has taken no action to exercise the option, show that the possibility that the People of Puerto Rico may purchase the lands of Central Cambalache is very remote, for which reason this court would not be justified in granting a writ of injunction "which would preclude the respondents and Central Cambalache from taking an action which in the absence of the supposed or alleged option they would have the right to take in accordance with the law."

*Second:* That the General Meeting of Stockholders of Central Cambalache held on September 6, 1940, adopted a resolution for taking a recess until the 20th of said month so that the directors might have an opportunity to draw a plan of reorganization of the corporation and to submit the same to the approval of the stockholders; that the respondents admit that they intend to submit to the stockholders, provided they are not prevented from so doing by a judicial order, a plan to carry out the alienation of the lands of the Central in accordance with the bases set forth in the plan submitted to the Attorney General; that the respondents anticipate that said plan will be approved by over two-thirds the outstanding capital stock issued; and that the proposed sale does not violate any Insular or Federal law, respondent and its stockholders having the inalienable right of selling the properties of the corporation or of distributing them among its stockholders.

*Third:* In the third special defense it is alleged that Act No. 47 of August 7, 1935, in so far as it grants to the People of Puerto Rico an option to purchase the lands or to cause the same to be sold at public auction is null and void: (1) Because the act contains more than one subject and one of them is not expressed in its title; (2) because it allows the imposition of penalties and leaves the choice or imposition thereof to powers other than the judicial power; (3) because it invokes the right of eminent domain without a declaration of necessity and conveniency to justify same, and without guaranteeing the payment of just compensation, all of which deprives Central Cambalache of its property without due process of law; (4) because it deprives the stockholders of their right to acquire the lands of the Central, and of their right, in case of dissolution of the corporation, to have its assets awarded to them after paying the liabilities; and (5) because it is *ex post facto* legislation.

*Fourth:* That the Attorney General of Puerto Rico is not authorized by any law to exercise in the name of the People

of Puerto Rico the option to buy the lands or to cause them to be sold at public auction; and that the acquisition of land by the People of Puerto Rico is and has been a right of the legislative power that has not been delegated to the Attorney General.

*Fifth:* That the aforesaid Act No. 47 does not grant to The People of Puerto Rico the right to purchase the properties of the defendant, but simply establishes the procedure to be followed in case the People of Puerto Rico, in conformity with Act No. 44 of August 6, 1935, should have developed beforehand a plan of financial reconstruction approved by the Economy Commission, these being circumstances which are not alleged either in the complaint or in the injunction petition, and which, according to respondents' information and belief, are nonexistent.

*Sixth:* That the provisions of Act No. 47 of 1935 can not reasonably be construed in the sense that the lands ought necessarily to be sold at public auction, or in the sense that the People of Puerto Rico has an absolute right to cause such sale to be made, but in the sense that the intention of the Legislative Assembly was to establish the sale at public auction as one of the possible means of placing the lands in the hands of persons qualified to possess them, if that result was not obtained through legal means, and that it can not be presumed that the Legislative Assembly had the intention of depriving the stockholders of the corporation of rights acquired under Sections 27 and 31 of the Corporation Law.

*Seventh:* That neither in the complaint nor in the prayer thereof is there any relief requested with regard to the disposition to be made of the properties of the defendant, nor is there any relief prayed for with regard to said properties or in order to exercise the option alleged to exist in favor of the petitioner.

*Eighth:* That the averments of the *quo warranto* complaint, as well as those of the injunction petition, are insufficient to justify the issuance of the writ of injunction sought.

At the hearing held on September 12, 1940, there were offered in evidence by the defendant, and admitted without objection, certified copies of the resolutions adopted by the stockholders and by the directors, and of the correspondence exchanged between counsel for the defendant and the Attorney General, to which reference is made in the answer. The parties agreed to submit the case upon briefs, the last of which was filed on April 18, 1941.

Before considering and deciding those questions of law that in our opinion are necessarily involved in this incident of the litigation herein, we deem it advisable to state the following findings of fact:

1. That the People of Puerto Rico has instituted, in this Supreme Court, *quo warranto* proceeding No. 3, against Central Cambalache, a corporation organized under the laws of Puerto Rico, wherein it is charged that the latter, in violation of its corporate charter and of the laws in force owns and controls agricultural lands in excess of 500 acres.

2. That the *quo warranto* complaint has been recorded in the Registry of Property, by means of a notice of *lis pendens,* with regard to all lands of the defendant.

3. That after the *quo warranto* proceeding had been instituted, and during the pendency of the same, counsel for the defendant corporation, in compliance with resolutions adopted by its stockholders and directors, took steps tending to compromise the pending suit through the sale to the People of Puerto Rico of the lands in excess of 500 acres which belonged to the defendant, and to that end they offered said properties for sale to the Attorney General of Puerto Rico. The offer was rejected for lack of available funds. Subsequently, the same counsel submitted to the approval of the Attorney General a plan for the transfer of the lands of Central Cambalache to a syndicate of stockholders. The plan was rejected owing to the disapproval of the same by the Department of Justice.

70

4. That the defendant and its stockholders and directors intend to carry out the plan for the transfer of the lands to a syndicate, unless they are prevented from so doing by judicial order.

 The first essential question to be considered and decided is: What is the interest or right of the People of Puerto Rico that should be protected by means of the writ of injunction sought?

The public policy declared by Congress and by the Legislative Assembly of Puerto Rico tends to avoid great concentrations of farming lands and to dissolve the existing large landed estates (*latifundios*) organized in violation of the statutes in force, which limit to 500 acres the amount of land that an agricultural corporation may legally own and control. With the object of enforcing the congressional prohibition and of imposing penalties for its violations, the Legislative Assembly approved Act No. 33 of July 22, 1935, whereby original and exclusive jurisdiction was conferred on the Supreme Court of Puerto Rico of all *quo warranto* proceedings that the People of Puerto Rico might institute for violations of the laws limiting the holding of lands by corporations.

It is true, as alleged by the respondents, that generally, a *quo warranto* proceeding does not preclude the defendant corporation from selling or transferring its properties during the pendency of the proceeding, and it is also true that generally the state in a proceeding of this nature has no interest in the properties of the defendant corporation. It was so held in the decisions which the respondents have cited and with which we agree, although we consider them to be inapplicable to the situation presented by the case at bar. All the cited cases refer to ordinary *quo warranto* proceedings, wherein the only matter in controversy was the right of the respondent to continue the use of its corporate franchise, without the state claiming any right or interest in

the disposition that the corporation might make of its prop-
erties before or after the decree of dissolution.

The respondents base their alleged right to alienate the
lands of Central Cambalache during the pendency of this
proceeding on the case of *Havemeyer* v. *Superior Court,* 84
Cal. 327, where it was said:

"There does, indeed, seem to be a sort of claim hinted at, rather
than directly asserted, in one of the briefs, that a purchase *pendente
lite* is in fraud of the rights of the state in such cases as this, and
therefore void. But there appears to be no foundation for this
claim. The state by its action acquired no lien on any of the
property of the corporation, and it is difficult to understand upon
what ground it can attack a sale *pendente lite.*" (P. 385.)

In the case at bar and in other similar cases, originally
brought before this Supreme Court by virtue of the provi-
sions of the cited Act No. 33 of 1935, there is involved not
only the right of defendant corporation to continue its cor-
porate existence, but also the final disposition to be made of
the lands acquired, owned, and controlled by the defendant
in contravention of its own charter as well as in open viola-
tion of the public policy of the People of Puerto Rico.

In order to meet a special situation—quite different from
that of the ordinary case of *quo warranto*—the Legislature
of Puerto Rico also passed Act No. 47 of August 7, 1935
(Session Laws, (2) p. 530), to amend Sections 2 and 6 of
the original statute, which, in so far as pertinent, now read
as follows:

"Section 2.—In case any person should usurp, or unlawfully
hold or execute any public office . . . . or any corporation does or
omits any act which amounts to a surrender or forfeiture of its
rights and privileges as a corporation, or exercises rights not con-
ferred by law, the Attorney General, or any prosecuting attorney
of the respective district court, either on his own initiative or at
the instance of another person, may file before any district court of
Puerto Rico a petition for an information in the nature of Quo
Warranto in the name of The People of Puerto Rico; or whenever
any corporation, by itself or through any other subsidiary or affili-

ated entity or agent, exercises rights, performs acts, or makes contracts in violation of the express provisions of the Organic Act of Puerto Rico or of any of its statutes, the Attorney General or any district attorney, either on his own initiative or at the instance of another person, may file before the Supreme Court of Puerto Rico a petition for an information in the nature of Quo Warranto in the name of The People of Puerto Rico; and if from the allegations such court shall be satisfied that there is probable ground for the proceeding, the court may grant the petition and order the information accordingly. . . .

"When any corporation by itself or through any other subsidiary or affiliated entity or agent is unlawfully holding, under any title, real estate in Puerto Rico, The People of Puerto Rico may, at its option, through the same proceedings, institute in its behalf the confiscation of such property, or the alienation thereof at public auction, within a term of not more than six months counting from the date on which final sentence is rendered.

"In every case, alienation or confiscation shall be through the corresponding indemnity as established in the law of eminent domain.

"Section 6.—In case any person or corporation against whom any such petition is filed, is adjudged guilty, the court may give judgment of ouster against such person or corporation from the office or franchise to which the petition refers, and fine such person or corporation for usurping, intruding in, or unlawfully holding and executing such office or franchise, and also give judgment in favor of the defendant for the costs of the prosecutions; *Provided,* That whenever sentence is pronounced declaring that the defendant has usurped or is unlawfully exercising the functions of any public office, said defendant must cease immediately in said office, and abandon the same; and if he fails to do so, the court, on petition of the Attorney General or of any person interested in the office, shall issue an order to the marshal compelling him to oust the defendant from office.

"Whenever, in the opinion of the court, it is satisfactorily established that the corporation or corporations have performed acts or exercised rights not conferred by law, or in violation of the express provisions thereof, the judgment entered shall, in case the defendant is a domestic corporation, decree the dissolution thereof and the prohibition to continue doing business in the country; and in the case of a foreign corporation, the nullity of all acts done and contracts made by the defendant corporation or entity; and in ad-

dition, said judgment shall decree the cancellation of every entry or registration made by the said corporations in the public registries of Puerto Rico; and when the decree of nullity affects real property and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, the final judgment shall fix the reasonable price to be paid for said property. For these purposes, the just value of the property subject to alienation or confiscation shall be fixed in the same manner as it is fixed in cases of condemnation proceedings.''

It is evident that the People of Puerto Rico is interested in a strict compliance with the provisions of the laws in force, and in the carrying out of the public policy conceived and announced with the object of protecting and promoting the economic welfare of the insular community; and that it has a right of option, either to purchase the lands or to demand that they be sold at public auction, said right having been acknowledged by the statute, and its validity upheld by decisions of the Supreme Court of Puerto Rico and of the U. S. Circuit Court of Appeals for the First Circuit. That right should be protected against any plan or scheme that may tend, as alleged in the present case, to hinder the People of Puerto Rico in the exercise of its option, and to make it possible for the defendant to continue owning and controlling, through a syndicate of its stockholders, the same lands that it has possessed and still possesses in violation of the law.

Let us now consider the special defenses in the same order in which they have been stated.

The first and second special defenses are absolutely without merit. The conferences or negotiations had between two litigating parties with the object of compromising the litigation pending before a court can not be set up as a defense by one of the parties against the other. An offer to compromise made by one of the parties produces no legal effect whatever and can not be introduced in evidence against the other party until the latter accepts it. This is such an

elementary principle of law that, in order to save time, we will refrain from searching for any citation to support it. Respondents themselves admit that the offer made by them to the Attorney General was rejected, as was also the plan for the reorganization of the defendant corporation. The People of Puerto Rico is not bound to exercise its option at such time as may favor the interests of the defendant. Moreover, said right of option does not come into legal existence, and hence can not be exercised, until a judgment has been rendered against the defendant decreeing its dissolution.

The construction given by us to Section 2 of the *Quo Warranto* Act, *supra,* in our order of July 26, 1940, appointing a receiver for the properties of defendant, in *People of Puerto Rico* v. *Rubert Hermanos, Inc.,* was upheld by the Circuit Court of Appeals in its decision of March 31, 1941, 118 F. (2d) 752.

The identical questions brought forward by the third special defense were raised in the *Rubert Hermanos, Inc.,* case, *supra,* and decided against the defendant corporation both by this court and by the Circuit Court.

Let us see how the Circuit Court of Appeals disposed of the contention that Act No. 47 of 1935, in so far as it grants to the People of Puerto Rico an option to buy the lands or to demand that the same be sold at public auction, is null and void as *ex post facto* legislation:

"The validity of the option provision is assailed mainly on the ground that it is in the nature of an *ex post facto* penalty forbidden by the Organic Act, 48 U.S.C.A. sec. 737. At the threshold of the argument it may be plausibly maintained that the provision is not a penalty at all but a remedial measure to undo the concentration of corporate land-holding brought about in violation of the public policy expressed in the Joint Resolution and in the territorial legislation. However this may be, and assuming, without deciding, that the provision is a penalty, we still do not see that its application here is *ex post facto.* After Act No. 47 was passed, on August 7, 1935, the corporation continued to hold the forbidden acreage with-

out taking any steps to dispose of the excess lands and without manifesting any intention to do so. Assuming that the corporation would have to be afforded a reasonable time after the passage of the act to dispose of its holdings, before the so-called penalty of sale by public auction could lawfully be imposed, the corporation did have such reasonable time here, and did nothing about it. . . . In view of what the court found to be a continuing violation for so long a time after Act No. 47 was passed, the so-called penalty, if applied in the case at bar, is not *ex post facto."* (118 Fed. (2d) 752, 758.)

The contention that the option is null and void because it deprives the defendant of its property without due process of law, and the stockholders, in case of dissolution, of their right to distribute the assets among themselves after paying the liabilities, does not merit serious consideration. The corporation can not be deprived of its property until after it has been defeated in court and until its dissolution has been decreed through a final and unappealable judgment. And the law expressly provides that in every case the alienation or confiscation shall be made upon the corresponding compensation, as provided in the Law of Eminent Domain. The stockholders have no right to complain. They can not distribute or award to themselves the lands unlawfully owned by the corporation, but they can distribute among themselves, in proportion to the number of shares of stock owned by each, the total proceeds of the same lands.

 In its opposition to the injunction petition, the defendant adopts certain positions which are inconsistent with each other. In its first defense it alleges that injunction does not lie to protect the option of the People of Puerto Rico, because the latter elected not to buy the lands when the Attorney General rejected the offer made by counsel for the defendant. And in the fourth defense it maintains that the Attorney General is not authorized by any law to exercise the option on behalf of the People of Puerto Rico. The inconsistency between these two defenses is evident.

The question relative to the lack of authority on the part of the Attorney General to exercise the option on behalf of the People of Puerto Rico was also raised in *Rubert Hermanos, Inc.* v. *People of Puerto Rico,* 118 F. (2d) 752, 760. The Circuit Court refused to consider it saying:

"Appellant contends that Act No. 47, properly construed, confers no authority upon the Attorney General to exercise this option on behalf of the People but requires the election to be made by legislative act. This question we do not pass on now, because the Supreme Court of Puerto Rico has had no occasion to consider it. The point may be presented to that court upon remand of the case."

The submission of said question which is attempted to be made at the present stage of the proceedings, is, in our opinion, premature and academic, for the reasons that will be stated presently.

In the record there is no showing that the Attorney General has exercised or attempted to exercise the option to buy or to demand a sale at public auction. And there can not be such showing for the simple reason that the right of option has no legal existence and can not be exercised, either by the Attorney General or by the legislative power, until after final judgment has been entered decreeing the dissolution of the corporation and the cancellation of its franchise.

In the cited case of Rubert Hermanos, Inc., as well as in the present case, it was alleged that the option had expired, because in accordance with the terms thereof, the People must avail of the same before a judgment of dissolution has been entered, which was not done in the case of Rubert Hermanos, Inc. In affirming the construction we placed upon the statute which created the option, the Circuit Court said:

"It is said that the option has lapsed, because by its terms, the People must exercise it prior to the judgment of dissolution, and this was not done. Section 1 of Act No. 47 provides that 'The People of Puerto Rico may, at its option, through the same proceedings, institute in its behalf the confiscation of such property, or the alien-

ation thereof at public auction, within a term of not more than six months counting from the date on which final sentence is rendered.' Section 2 provides that 'when the decree of nullity affects real property and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, the final judgment shall fix the reasonable price to be paid for said property.' The contention is that the clause 'within a term of not more than six months from the date on which final sentence is rendered' qualifies only the last antecedent clause 'or the alienation thereof at public auction'; and therefore that it is the sale that must take place within six months from the date on which final sentence is rendered. The court below, however, reads sec. 1 as meaning that the People of Puerto Rico have six months after the judgment of dissolution becomes final within which to apply in the *quo warranto* proceedings for confiscation or sale at public auction; that this judgment did not become final until the mandate of the United States Supreme Court was received by the clerk of the Supreme Court of Puerto Rico, on May 13, 1940, so that the option could be exercised at any time up to November 13, 1940. We think that this is a reasonable, perhaps the more reasonable, interpretation of the act, and this being so, we accept the interpretation of a local statute made by the insular court. Section 2 of Act No. 47 does not necessarily mean, as appellants contend, that there is to be only one final judgment in the course of the *quo warranto* proceedings. There may be a final 'decree of nullity' upon the determination that the corporation has by its acts forfeited its charter; and if, thereafter, the People should elect to have the property sold at public auction there may, in the same proceedings, be a 'final judgment' ordering the sale and fixing 'the reasonable price to be paid for said property.' The *quo warranto* proceedings were not at an end with the final affirmance by the Supreme Court of the United States of the 'decree of nullity'. Indeed, the mandate of the Supreme Court of the United States remanded the case to the insular Supreme Court 'for further proceedings' which fairly would include any proceedings necessitated by subsequent exercise of the option.

" * * * * * * *

"We conclude that after the judgment of dissolution was finally affirmed it was still open to the People to exercise the option, and that the Supreme Court of Puerto Rico had jurisdiction in the continuing *quo warranto* proceedings to entertain and act on any subsequent application by the People in the exercise of the option within the six months' period."

In the case at bar no final judgment of dissolution has been rendered, and hence the period for the exercise of the option by whoever is entitled to do so, has not commenced to run. The question of whether it is the Attorney General, the Governor, or the Legislative Assembly who has the right to exercise the option, is one which we will decide when it shall be properly and opportunely submitted to us.

The last four special defenses are practically a repetition of the others, and must be overruled for the reasons we have stated in dismissing the preceding defenses.

■ The recording in the registry of the notice of *lis pendens* is not, in our judgment, an obstacle to the granting of the injunction sought. The function of a *lis pendens* notice is to inform the purchaser or whoever obtains a lien on the property in controversy, that there is an action pending. The recording of such notice does not prevent the transfer of the property to whoever may wish to purchase the same subject to its legal effects. The function of an injunction is to maintain the *status quo* by preventing the alienation of the property to third persons and by avoiding the multiplicity of suits that would arise by reason of the subsequent transfers that might be made.

In the present case, the defendant, which holds lands in excess of the acreage permitted by law, intends, during the pendency of a *quo warranto* proceeding and after it has been submitted to the jurisdiction of this Supreme Court, and without a previous judicial authorization, to transfer the lands in controversy to a syndicate formed by its own stockholders, on which lands petitioner has a right of option which it is not bound to exercise until final judgment has been rendered. The proposed transfer—to be made subject to the *lis pendens* notice—can have no other purpose than to hinder petitioner in the exercise of its option. If the stockholders were allowed to acquire the properties as owners in common and undividedly, the probable result would be a multiplicity of suits and judicial proceedings. The death

of one or more of the stockholders would cause their interests in the lands to pass to their heirs, with the consequent complications if some of the heirs were minors. The attachment by a creditor of the share or undivided interest of a stockholder would bring about additional complications. All of this may be avoided by leaving the title of the properties where it is now, until the termination of the pending suit between the corporation, alleged transgressor, and the People of Puerto Rico, who is seeking to enforce its laws and to carry out its land policy. From the date of the approval of Act No. 47, August 7, 1935, to that of the filing of the *quo warranto* complaint, July 19, 1937, respondent had ample opportunity to comply with the law by disposing of the excess land. It failed to do so. It chose to test the validity of its title and thereby compelled the Government to institute the *quo warranto* proceeding, to the end that, under the authority and direction of this Supreme Court, the mandate of the law should be respected and complied with.

For the reasons stated, the petition must be sustained and the issuance of the writ of injunction applied for ordered without a bond, as Section 681 of the Code of Civil Procedure (1933 edition) does not require it.